[Cite as *In re B.P.*, 2012-Ohio-1278.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HANCOCK COUNTY**

IN THE MATTER OF:

    **B.P.,**                               **CASE NO.  5-11-33**

**ALLEGED NEGLECTED AND
DEPENDENT CHILD.**

                                        **O P I N I O N**

**[NICOLE PFISTER-APPELLANT]
[BRIAN PFISTER-APPELLANT]**

IN THE MATTER OF:

    **C.P.,**                               **CASE NO.  5-11-34**

**ALLEGED NEGLECTED AND
DEPENDENT CHILD.**

                                        **O P I N I O N**

**[NICOLE PFISTER-APPELLANT]
[BRIAN PFISTER-APPELLANT]**

IN THE MATTER OF:

    **M.C.,**                              **CASE NO.  5-11-35**

**ALLEGED NEGLECTED AND
DEPENDENT CHILD.**

                                        **O P I N I O N**

**[NICOLE PFISTER-APPELLANT]
[BRIAN PFISTER-APPELLANT]**

**Appeals from Hancock County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 20930049, 20930050 and 20930048**

**Judgments Affirmed**

**Date of Decision:   March 26, 2012**

**APPEARANCES:**

*Charles R. Hall, Jr.*  for Appellants

*Mark C. Miller and Benjamin E. Hall*  for Appellee, Hancock Co. Prosecutor's Office

*Carroll Creighton*,  GAL, CASA

**PRESTON, J.**

{¶1} Parents-appellants, Nicole and Brian Pfister ("Nicole" and "Brian"), appeal the Hancock County Court of Common Pleas Juvenile Division's decision granting the Hancock County Job and Family Services-Children's Protective Services Unit ("CPSU")'s motions for permanent custody of their three minor

children, B.P., C.P., and M.C.[1]  For the reasons that follow, we affirm.

{¶2} On November 17, 2009, B.P., who was three years old, was found in the street in front of Nicole and Brian's home. (Aug. 23, 2011 Tr. at 26-27).  B.P. was only wearing a urine soaked diaper. (*Id*.).  Police officers took B.P. and returned him to Nicole and Brian, who were asleep. (*Id*.).

{¶3} On November 20, 2009, B.P. was again found on the street wearing only a diaper soaked in urine. (*Id*.).  The police removed B.P, C.P., and M.C. from Nicole and Brian's home. (Doc. Nos. 1, 1, 1).[2]  At the time of the removal, Nicole and Brian provided dirty clothes for the children. (Aug. 23, 2011 Tr. at 30).  B.P. and C.P's shoes were too small, and M.C. only had sandals. *Id*.  Both B.P. and C.P. had bleeding diaper rashes. *Id*.  B.P's toes were also bruised and smashed from canned goods he had dropped on them approximately one to two months prior. *Id*.  Nicole and Brian did not supply medication for any of the children. *Id*.

{¶4} On November 23, 2009, CPSU filed motions for predispositional orders for B.P., C.P., and M.C. (Doc. Nos. 1, 1, 1).  The juvenile court held a

---

[1] At the permanent custody hearing, C.P.'s birth certificate was admitted into evidence showing his initials are K.P. and the court's caption of C.P. was incorrect. (Aug. 23, 2011 Tr. at 22).  We will continue to refer to K.P. as C.P. to remain consistent with the court documents in this case.  Additionally, Nicole and Brian refer to M.C. as M.P. in their fifth assignment of error.  Testimony indicated that at the time of the hearing, M.C.'s name had recently been changed to M.P. (*Id*. at 19).  We will also refer to M.P. as M.C. to remain consistent with the court documents.

[2] Since there are three separate trial court case numbers involving each child, citations to the record will have three docket numbers, one for each case, even though many of the docket numbers are identical.  The first number will refer to B.P. in appellate case number 5-11-33, the second will refer to C.P. in case number 5-11-34, and the third will refer M.C. in case number 5-11-35.

hearing on November 25, 2009 and placed the children in CPSU's emergency temporary custody. (Doc. Nos. 6, 6, 6).

{¶5} On December 21, 2009, the juvenile court appointed Rhonda Braun ("Braun") to serve as the children's guardian ad litem ("GAL"). (Doc Nos. 10, 10, 10).

{¶6} The juvenile court held an adjudication hearing on January 7, 2010 and found the children were neglected and dependent. (Doc. Nos. 13, 13, 13). On February 11, 2010, the court held a dispositional hearing and placed the children in the temporary custody of CPSU. (Doc. Nos. 15, 15, 15).

{¶7} On November 19, 2010, the juvenile court granted a six month extension on the case. (Doc. Nos. 20, 20, 20).

{¶8} CPSU filed for permanent custody of all three children on April 19, 2011. (Doc. Nos. 31, 31, 31). The parties participated in mediation on August 9, 2011 but failed to reach an agreement. (Doc. Nos. 42, 42, 44).

{¶9} On August 16, 2011, the court appointed Carroll Creighton to serve as independent counsel for the children. (Doc. Nos. 43, 43, 45).

{¶10} The juvenile court held a permanent custody hearing on August 23 and 24, 2011. (Doc. Nos. 47, 47, 48). On August 26, 2011, the court granted CPSU's motion for permanent custody. (*Id.*).

{¶11} On September 23, 2011, Nicole and Brian filed their notices of appeal and now raise five assignments of error for our review. For purposes of our discussion, we will address their second assignment of error first.

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY FOR THE CHILDREN BECAUSE IT WAS NOT IN THEIR BEST INTEREST**

{¶12} In their second assignment of error, Nicole and Brian argue the juvenile court erred in determining that granting permanent custody to CPSU was in the children's best interest. Nicole and Brian contend that they maintained visitation with their children while they were in CPSU's temporary custody, that the children are bonded to them, and that the children did not express a desire for the court to grant CPSU's motions for permanent custody.

{¶13} The right to raise one's own child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). Parents have a "fundamental liberty interest" in the care, custody, and management of their children that is protected by law. *Id*. However, parental rights and interests in their children are not absolute. *In the Matter of Thomas*, 3d Dist. No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Nos. 5-02-52, 5-02-53, 5-02-54, 2003-Ohio-1269, ¶ 6. "When considering a motion to

terminate parental rights, the trial court must comply with the statutory requirements set forth in R.C. 2151.414." *In the Matter of C.E.*, 3d Dist. Nos. 5-09-02, 5-09-03, 2009-Ohio-6027, ¶ 14.

{¶14} According to R.C. 2151.414(B)(1), a court may grant permanent custody of a child to the agency that filed the motion if the court determines by clear and convincing evidence that it is in the child's best interest and that the "child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *." When determining whether granting permanent custody to the agency is in the best interest of the child, the court must consider all of the relevant factors listed in R.C. 2151.414(D)(1), including:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children

services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *;

(d)   The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)   Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

Additionally, R.C. 2151.414(E) requires the court to consider all of the relevant evidence when determining whether a child can be placed with either parent within a reasonable time.   In pertinent part, the court must find that the child cannot or should not be placed with either parent if it determines by clear and convincing evidence that:

Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.   In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical,

psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. R.C. 2151.414(E)(1).

**{¶15}** Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954), citing *Merrick v. Ditzler*, 91 Ohio St. 256 (1915). The Supreme Court of Ohio has defined clear and convincing evidence as an intermediate standard, "being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Id*. This Court must "determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof." *In the Matter of Lane*, 3d Dist. Nos. 9-03-61, 9-03-62, 2004-Ohio-2798, ¶ 27.

**{¶16}** In the present case, the parties stipulated that the children had been in CPSU's temporary custody for at least 12 of a consecutive 22 month period. (Aug. 23, 2011 Tr. at 10). Consequently, the sole issue before the juvenile court was whether granting CPSU's motion for permanent custody was in the children's best interest.

{¶17} The juvenile court found by clear and convincing evidence that granting permanent custody to CPSU was in the children's best interest. (Doc. Nos. 47, 47, 48). The court stated that it considered all of the relevant factors in R.C. 2151.414, including "the relationship of the children with their parents, relatives, foster parents, out-of-home providers and other people who may significantly affect the children's need for legally secure permanent placement and the probability that this type of placement can be achieved only through the granting of permanent custody." (*Id.*).

{¶18} In making its decision, the court relied on the lengthy period of time the children had been in CPSU's custody without any improvement in Nicole and Brian's parenting skills and the number of services CPSU made available, including: case management; information and referral; transportation; life skills group, home based therapy; domestic violence and substance abuse counseling; developmental assessments; supervised visitation; unsupervised visitation; and extended unsupervised visitation. (*Id.*). The juvenile court found that Nicole failed to participate in the domestic violence counseling and failed to complete the life skills group as required by the case plan. (*Id.*). The court also found that Brian failed to complete the required substance abuse counseling. (*Id.*). The court noted that CPSU had provided the parents with transportation to their appointments and

the local mental health and substance abuse agency was within walking distance of their home. (*Id*.).

{¶19} The court also relied on incidents that occurred during Nicole and Brian's unsupervised visitation with the children. (*Id*.). The court found that the parents failed to provide one of the children with a required breathing treatment despite having been warned of its importance. (*Id*.). The court further found that Nicole and Brian failed to meet an appointment with the foster mother because they overslept and that Brian kicked a hole in the apartment wall "in a fit of anger." (*Id*.).

{¶20} Additionally, the court considered issues addressed in a letter the caseworker sent to the Assistant Prosecuting Attorney as well as the GAL's recommendation that the court grant permanent custody of the children to CPSU. (*Id*.). The juvenile court ultimately determined that Nicole and Brian had failed to change and address the problems that had caused the children's removal from their home. (*Id*.). The court stated, "[t]he children need to get on with their lives and the only way to permit that to happen is to grant permanent custody to the agency. There is little hope that the situation will improve with the passage of time." (*Id*.).

{¶21} The juvenile court's decision is supported by the record. The parties stipulated that CPSU had created a case plan that was "reasonably calculated to correct the reasons the children were removed." (Aug. 23, 2011 Tr. at 10). Mark

Olthouse ("Olthouse"), Nicole and Brian's caseworker, testified at length regarding CPSU's case plan. Olthouse stated that he had created the case plan in conjunction with Nicole, Brian, and the GAL, and had reviewed the case plan with the parents during his monthly home visits. (*Id.* at 49-51).

{¶22} The first objective of the case plan was that Nicole and Brian were to provide a safe and stable home environment for the children. (*Id.* at 56). Olthouse testified that the parents achieved this objective. (*Id.* at 57).

{¶23} The second objective required Nicole and Brian to obtain mental health, intellectual functioning, and substance abuse assessments. (*Id.*). They were also required to follow all recommendations made pursuant to the assessments. (*Id.*). Olthouse testified that this objective was important because Brian admitted he had previously abused prescription drugs and was receiving treatment in Toledo. (*Id.* at 58). CPSU was concerned because Nicole was also diagnosed with depression. (*Id.*). Olthouse testified that Nicole and Brian completed the assessments but did not follow through on the recommendations. (*Id.*). Brian was required to attend substance abuse and anger management counseling at Century Health, located a few blocks from their home. (*Id.* at 60). Brian had thirty scheduled appointments and missed ten of them. (*Id.* at 159). Century Health terminated Brian's case in June of 2011 due to missed appointments. (*Id.* at 59). Nicole was prescribed medication to treat her depression but failed to renew the

prescriptions. (*Id*. at 61). As part of her mental health treatment, Nicole was referred to Open Arms for domestic violence counseling. (*Id*. at 63-64). Kelly Mendoza ("Mendoza"), a case manager with Open Arms, testified that Nicole was required to participate in a victims' support group that would meet once a week for 20 weeks. (*Id*. at 191). Mendoza stated that Nicole completed the intake and first group session. (*Id*. at 192-194). Subsequently, Mendoza arranged to have individual sessions with Nicole to accommodate her work schedule. (*Id*. at 195). Nicole failed to attend any of the individual sessions. (*Id*. at 195-198). Olthouse testified that Nicole and Brian did not successfully complete the second objective. (*Id*. at 58-59).

{¶24} The third objective required Nicole and Brian to gain additional parenting knowledge and skills. (*Id*. at 74). Olthouse testified that CPSU intended the objective to address the supervision of the children, specifically B.P., who has special needs. (*Id*.). CPSU provided both home based therapy for the entire family and play therapy for the children. (*Id.* at 75). The parents were also required to attend parenting sessions with a doctor at Safe Harbor to address B.P.'s specific behavioral problems. (*Id*. at 76-77). Olthouse testified that there was no improvement in Nicole and Brian's parenting skills, and that they failed to attend

all of the required sessions. (*Id*. at 74-77). Olthouse testified that they failed to complete the third objective. (*Id*. at 75).[3]

{¶25} The fourth objective required Nicole and Brian to gain additional life skills. (*Id*. at 83). Nicole and Brian were required to attend twelve life skills group sessions at Century Health. (*Id*. at 83-85). CPSU modified this objective for Brian to require him to focus on his substance abuse treatment rather than attending the life skills group classes. (*Id*. at 85). Century Health also modified the life skills classes for Nicole. (*Id*. at 85). Robin Brown ("Brown"), a therapist at Century Health, testified that Nicole was unable to start the life skills group classes because of her depression. (*Id*. at 153). Brown provided Nicole with individual therapy instead. (*Id*.). Nicole disclosed to Brown that Brian was controlling and emotionally abusive. (*Id*. at 154). Brown testified that Nicole stopped attending appointments in March of 2011, missing nine appointments total. (*Id*. at 159). Olthouse testified that neither parent successfully completed this objective. (*Id*. at 84-85).

{¶26} The fifth objective required the children to have developmental assessments and receive ongoing treatment as recommended pursuant to the assessments. (*Id*. at 87). Nicole and Brian were required to attend the appointments with their children. (*Id*.). CPSU was concerned with the children's

---

[3] This Court will discuss Nicole and Brian's participation in the sessions in greater detail when we address the fifth objective, which required them to attend the same sessions.

development because neither C.P. nor B.P., ages two and three, could speak. (*Id.* at 88). Olthouse testified that CPSU observed other delays and problems with the children, so they all needed to be evaluated. (*Id.*). B.P was originally diagnosed as possibly having an autism spectrum disorder. (*Id.* at 89). Upon further evaluation, the doctor determined B.P. did not have an autism spectrum disorder. (*Id.* at 94). Rather, he had developmental delays and behavioral problems based on "his level of development, innate temperament, family history, and environmental factors." (*Id.* at 94-95). As a result of these assessments, B.P. received speech and occupational therapy. (*Id.* at 90). The occupational therapy was parent-child interaction therapy intended to train the parents to address B.P.'s extreme behavior. (*Id.*at 92-93). Nicole and Brian only attended ten out of B.P.'s eighteen occupational therapy appointments. (*Id.* at 100). Olthouse testified that they were provided with transportation to these appointments. (*Id.* at 102). Furthermore, Nicole and Brian only attended one of B.P's speech therapy appointments, which took place once, and sometimes twice, each week. (*Id.* at 103-104). Medicaid provided the parents with transportation to these appointments. (*Id.*). Olthouse testified that Nicole and Brian failed to complete the fifth objective. (*Id.* at 87-88).

{¶27} The sixth objective required Nicole and Brian to provide the children with appropriate medical and dental care. (*Id.* at 106). The parents were required to "attend medical and dental appointments for the children as requested and

appropriate." (*Id*.). C.P. had some breathing issues and needed to use an inhaler four times each day. (*Id*. at 107). Olthouse testified that the parents failed to give C.P. his breathing treatment until after two in the afternoon during their unsupervised visitation. (*Id*.). Olthouse also testified that the parents had problems getting B.P. to a medical appointment. (*Id*. at 107-108.). Olthouse testified that Nicole and Brian failed to meet this objective. (*Id*. at 106-107).

**{¶28}** Olthouse testified further regarding Nicole and Brian's extended unsupervised visitation with the children. The visitation was a ten day trial reunification that took place from February 18 through February 27, 2011. (*Id*. at 40). Olthouse stated that CPSU still had concerns about Nicole and Brian providing adequate care for the children and ensuring their safety at the time of the trial reunification. (*Id*.). However, CPSU decided to give the parents a trial reunification because CPSU did not have any additional services to offer to resolve the remaining issues. (*Id*.). Olthouse testified that since CPSU still saw similar problems during the trial reunification and did not have any other services to offer, CPSU filed for permanent custody of the children. (*Id*.).

**{¶29}** The first problem Olthouse noted was that Nicole and Brian failed to get B.P. ready for an appointment with the foster mother to take him to the doctor. (*Id*. at 42). Neither B.P. nor the parents were awake when the foster mother arrived. (*Id*.). Olthouse testified that the parents were unable to take B.P. to the

doctor without the foster mother's assistance because they did not have any transportation. (*Id*. at 46). Secondly, Nicole and Brian failed to provide C.P. with his breathing treatment until after two in the afternoon, as previously discussed. (*Id*. at 43). Finally, Olthouse stated that Brian "kicked a large hole in the apartment wall in response to the upstairs neighbors complaining about the noise level in the parents' apartment." (*Id*.). Olthouse testified that he personally observed the hole, Brian admitted he had kicked the hole in the wall, the children told Olthouse about the hole in the wall, and the children were present at the time of the incident. (*Id*. at 43-44). All of these problems occurred while the parents were involved in home based therapy provided by CPSU. (*Id*. at 48).

{¶30} Olthouse recommended that the juvenile court grant permanent custody of the children to CPSU because the parents had failed to remedy the problems that caused the children's removal, the parents had been unable to address their own issues, and the children needed permanency. (*Id*. at 119-121). Olthouse stated, "[t]hey need to not be in limbo, thinking they're going home, spending time in the home and then being taken back to supervised visitation." (*Id*. at 121).

{¶31} Braun, the GAL assigned to represent the children's interests, submitted a report regarding the issue of permanent custody. (*Id*. at 307); (Ex. A). Braun testified at the hearing and stated in her report that she recommended the

court grant CPSU permanent custody of the children. (*Id*.); (*Id*.). In her report, Braun outlined each child's special needs. (Ex. A). Braun stated that Nicole and Brian were still struggling to implement improved parenting skills, and that the parents had not learned the skills required to maintain a safe and stable environment for their children. (*Id*.). Braun noted that B.P. and C.P. were too young to express their wishes, but that M.C. asked when he would be able to go home. (*Id*.). Braun based her recommendation that the court grant CPSU permanent custody on the parents' lack of responsibility in caring for the children without the assistance of the foster mother, their inability or unwillingness to attend appointments and make improvements, and the diagnosis that the children's developmental delays were a result of their environment. (*Id*.). Braun stated that the diagnosis "displays the lack of parenting skills to provide the basic needs for the kids then and now." (*Id*.).

{¶32} Considering the factors listed in R.C. 2151.414(D)(1), this Court cannot conclude that the juvenile court erred in determining there was clear and convincing evidence that granting permanent custody to CPSU was in the children's best interest. The record shows that Nicole and Brian have been unable to improve their parenting skills and take responsibility for their children. R.C. 2151.414(D)(1)(a). They have failed to attend numerous appointments and take advantage of the many services CPSU provided to help them and their children,

including failing to complete substance abuse counseling, anger management counseling, domestic violence counseling, and life skills classes. (Aug. 23, 2011 Tr. at 56-128). They have also failed to attend appointments for their children, such as B.P.'s speech therapy and occupational therapy appointments, the purpose of which was to provide the parents with the skills to address his behavioral problems. (*Id.*). Nicole and Brian have not improved the conditions that led to their children's removal, indicated by their failure to provide C.P. with his required breathing treatment, their inability to wake up on time and get B.P. to the doctor without the assistance of the foster mother, and Brian kicking a hole in the wall as a result of his anger during a trial reunification. (*Id.*). These facts support the juvenile court's determination that Nicole and Brian have failed to create a positive parental relationship with the children that will provide them with a safe, stable environment.

{¶33} Additionally, R.C. 2151.4141(E)(1) requires the juvenile court to find that the children should not or cannot be placed with either parent if:

> Following the placement of the child outside the child's home and
> notwithstanding reasonable case planning and diligent efforts by the
> agency to assist the parents to remedy the problems that initially
> caused the child to be placed outside the home, the parent failed

continuously and repeatedly to substantially remedy the conditions
causing the child to be placed outside the child's home.

The record demonstrates that Nicole and Brian have continuously and repeatedly failed to take the steps necessary to substantially remedy the conditions that caused the removal of their children by failing to attend required appointments and take responsibility for their children. (Aug. 23, 2011 Tr. at 56-128). Thus, we cannot find that the juvenile court erred in determining that the children should not or cannot be placed with either parent. Furthermore, R.C. 2151.414(D)(1)(d) requires the juvenile court to consider the children's need for permanent and secure placement. The determination that the children cannot or should not be placed with Nicole and Brian prevents them from having a legally secure permanent placement with their parents.

{¶34} Finally, the juvenile court was required to consider the children's wishes as expressed by the child or through the GAL. R.C. 2151.414(D)(1)(b). The GAL, as the children's representative, recommended that the juvenile court grant CPSU permanent custody of the children. B.P. and C.P. were too young to make their wishes known, but the court appointed an independent attorney, separate from the GAL, to represent the children as a result of M.C.'s statements that he wanted to go home. (Ex. A); (Aug. 24, 2011 Tr. at 324). The attorney did not present any new evidence that returning the children to their parents was in

their best interest. The attorney also did not present any additional statements by the children expressing their wishes to be reunited with Nicole and Brian. The juvenile court thus considered the children's wishes as presented by the GAL as well as the evidence presented by the independent attorney during the hearing. Based on the foregoing, we conclude that the juvenile court's judgment is supported by clear and convincing evidence.

{¶35} Nicole and Brian's second assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT'S DECISION TO TERMINATE THE APPELLANTS' PARENTAL RIGHTS AND GRANT PERMANENT CUSTODY TO THE AGENCY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE**

{¶36} In their first assignment of error, Nicole and Brian argue the juvenile court's decision is against the manifest weight of the evidence because they were not given ample opportunity to regain custody of the children. Nicole and Brian contend that CPSU failed to present evidence for why they moved from unsupervised visitation to supervised visitation, and that CPSU also failed to provide reasons for filing motions for permanent custody rather than attempting reunification.

{¶37} This Court will not overturn the juvenile court's judgment as being against the manifest weight of the evidence "if the record contains competent,

credible evidence by which the court could have formed a belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re Baby Boy W.*, 3d Dist. No. 5-10-39, 2011-Ohio-2337, ¶ 20, citing *In re Forest S.*, 102 Ohio App.3d 338, 344-345 (1995).

{¶38} The parties stipulated that the children had been in CPSU's custody for at least 12 months out of a consecutive 22 month period. (Aug. 23, 2011 Tr. at 10). Consequently, the only issue before the juvenile court was whether granting CPSU permanent custody was in the children's best interest. We have already found clear and convincing evidence supporting this judgment. As a result, there is competent, credible evidence supporting the juvenile court's determination and we cannot conclude that the juvenile court's decision is against the manifest weight of the evidence.

{¶39} Nicole and Brian's first assignment of error is, therefore, overruled.

### ASSIGNMENT OF ERROR NO. III

**THE AGENCY DID NOT MAKE A GOOD FAITH EFFORT TO REUNIFY THE APPELLANTS WITH THEIR CHILDREN**

{¶40} In their third assignment of error, Nicole and Brian argue CPSU did not make a good faith effort to reunify them with the children because CPSU did not prove the case plan was designed to correct the problems and return the children to their parents. Nicole and Brian contend that CPSU "allowed itself to lose its way" in managing their case plan.

{¶41} R.C. 2151.419 requires children services agencies to make reasonable efforts to return the child to the parents. *Thomas*, 2003-Ohio-5885, at ¶ 9. The agency has the burden of showing that it made reasonable efforts towards reunification. *Id.* Consequently, the case plan must establish goals designed to address specific concerns the agency has about the parent, as well as the steps the parent can take to achieve reunification. *Id.* "[T]he issue is not whether there was anything more that CPSU could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances." *Id.*

{¶42} In the present case, CPSU made reasonable efforts towards reunification. The parties stipulated that CPSU had created a case plan that was "reasonably calculated to correct the reasons the children were removed." (Aug. 23, 2011 Tr. at 10). This case plan included six objectives tailored to address the reasons why the children were removed from their parents' home. These objectives included: (1) providing a safe and stable home environment for the children; (2) obtaining mental health, intellectual functioning, and substance abuse assessments; (3) gaining additional parenting knowledge and skills; (4) gaining additional life skills; (5) obtaining developmental assessments and ongoing treatment for the children; and (6) providing the children with appropriate medical and dental care. (Case plan, Ex. 18). The case plan also specified steps Nicole and Brian were required to take including attending counseling sessions, life skills

classes, and their children's therapy appointments. (*Id.*). Nicole and Brian did not fulfill these requirements and did not present any evidence that CPSU would have failed to reunify them with their children if they had.

{¶43} Nicole and Brian rely on *In the Matter of C.E.*, in support of their argument. 3d Dist. Nos. 5-09-02, 5-09-03, 2009-Ohio-6027. In that case, this Court reversed a juvenile court's decision to grant permanent custody to the agency as to the father, but not the mother. *Id.* at ¶¶ 22, 33. This Court affirmed terminating the mother's permanent custody of the children because the agency had made a case plan reasonably calculated to remedy the problems that had caused the children's removal, but the mother had failed to comply. *Id.* at ¶ 16. This Court reversed the grant of permanent custody to the agency in regard to the father because we found that the agency had not made a good faith effort to provide a case plan that would reasonably result in the reunification of the father with his children. *Id.* at ¶ 33.

{¶44} The present case is clearly distinguishable from *In the Matter of C.E.* In that case, the father completed the two required objectives, which were to obtain a psychological evaluation as well as a mental health and substance abuse evaluation. *Id.* at ¶ 23. No psychological, mental health, or substance abuse problems were discovered and no additional treatment was recommended. *Id.* at ¶ 25-27. During the hearing, the agency testified that it still had concerns about

reuniting the children with the father because he was married to another woman, was older and had some health problems, and had a drug conviction over 20 years prior. *Id*. at ¶ 28. This Court held the agency did not make a good faith effort to provide a case plan that would reunite the father with his children because the agency did not make any further recommendations to address its concerns. *Id*. at ¶ 33. Consequently, the father had fulfilled his obligations under the case plan. *Id*.

**{¶45}** In the present case, Nicole and Brian have failed to complete five out of the six objectives. (Aug. 23, 2011 Tr. at 56-128). CPSU established specific steps Nicole and Brian could take to address the issues that led to the children's removal and reunify them with the children. (Ex. 18). There is no evidence that CPSU did not act in good faith and would have failed to reunify Nicole and Brian with the children had they completed the case plan.

**{¶46}** Nicole and Brian's third assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. IV

**THE TRIAL COURT ERRED BY NOT MAKING A FINDING ON THE RECORD AS TO THE WISHES OF THE CHILDREN FOR THE PERMANENT CUSTODY**

**{¶47}** In their fourth assignment of error, Nicole and Brian argue the juvenile court erred by not making a finding on the record regarding the children's wishes. Nicole and Brian contend that the GAL's testimony did not indicate whether she tried to determine the children's wishes prior to making her

-24-

recommendation. Nicole and Brian argue that, without this information, the juvenile court could not make a decision regarding the children's wishes as required by statute.

**{¶48}** R.C. 2151.414(D)(1)(b) requires the court to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." The Supreme Court of Ohio has noted that in some cases, the guardian ad litem can act as the juvenile's attorney as well. *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, ¶ 18. However, in certain situations, such as when a guardian ad litem's recommendation conflicts with the juvenile's wishes, the juvenile is entitled to independent counsel to represent those wishes. *Id*. at ¶¶ 18, 29.

**{¶49}** The juvenile court addressed this issue in the present case, stating:

[W]e appointed an attorney for the children, it came to us by representation from CASA that at least the oldest child indicated a desire to return to the parents and that was a recommendation- that was a desire that was contrary to the recommendation of the CASA. So we felt even though the child was of very tender years, that it would be probably in his best interest to be represented by counsel. (Aug. 24, 2011 Tr. at 324).

Furthermore, in her report, the GAL stated, "KP and BP are too young to express their wishes, whereas, MC the oldest asks when he will get to go home."[4] (Ex. A). Thus, the record contains evidence that the juvenile court did consider the children's wishes in light of their maturity. B.P. and C.P. were too young to make their wishes known, so it was not possible for the juvenile court to obtain this information. The court had to consider the GAL's recommendation based on the children's maturity. However, the juvenile court appointed counsel for M.C. because he had asked when he would be able to go home. Throughout the hearing, M.C.'s counsel opposed CPSU by cross examining each of their witnesses. M.C.'s counsel thus represented M.C.'s desire to return to his parents during the judicial process. As a result, the juvenile court met all of the procedural requirements for representing the children's interests during the permanent custody hearing.

{¶50} Nicole and Brian's fourth assignment of error is, therefore, overruled.

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED BY ALLOWING THE ALLEGED MP STATEMENT TO BE PLACED INTO EVIDENCE AGAINST THE PARENTS[5]**

---

[4] KP refers to C.P.
[5] MP refers to M.C.

{¶51} In their fifth assignment of error, Nicole and Brian argue the juvenile court committed plain error by admitting M.C.'s statements. Nicole and Brian contend that M.C.'s statements were hearsay that do not meet an exception. Consequently, Nicole and Brian argue M.C.'s statements were inadmissible. The State responds that M.C.'s statements were admissible as admissions by a party-opponent.

{¶52} The statements at issue were admitted during testimony by Judith Hutton ("Hutton"), a case worker with the foster care agency. (Aug. 24, 2011 Tr. at 208-222). Hutton testified that M.C. told her Brian got angry and broke a controller to M.C.'s video game. (*Id*. at 221). M.C. also told her that the three children were fighting and his parents did not do anything. (*Id*. at 222). Finally, M.C. made statements to Hutton regarding his parents' relationship. Hutton testified, "[h]e had stated that mom was crying because mom and dad had gotten in a fight and they were cursing and yelling and dad got his shoes, hat and coat on and was going to leave." (*Id*. at 219). According to Hutton, M.C. also stated, "[h]e told us we drive him nuts," while referring to Brian. (*Id*. at 220).

{¶53} Hearsay is inadmissible unless an exception to the rule applies. Evid. R. 802. However, an admission by a party-opponent is not considered hearsay. Evid. R. 801. An admission by a party-opponent is a statement that "is offered against a party and is (a) his own statement, in either his individual or

representative capacity * * *." Evid. R. 801 (D)(2). The Supreme Court of Ohio has held that "a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding." *Williams*, 2004-Ohio-1500 at ¶ 29.

**{¶54}** Nicole and Brian failed to object to the admission of M.C.'s statements during the hearing. As a result, the plain error standard applies. *Ordean v. Ordean*, 3d Dist. No. 17-06-15, 2007-Ohio-3979, ¶¶ 12-13. We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990), quoting *State v. Long*, 53 Ohio St.2d 91(1978), paragraph three of the syllabus. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Under the plain error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors. *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58 (1990).

**{¶55}** M.C., as a juvenile subject to a court proceeding to terminate parental rights, is a party to the case. *Williams*, 2004-Ohio-1500, at ¶ 29. The court appointed counsel to represent M.C. because he had stated that he wanted to go home. (Aug. 24, 2011 Tr. at 324). Consequently, M.C.'s statements were

admissible against him and could be used to show that although his wishes were to remain with his parents, granting Nicole and Brian permanent custody was not in his best interest. Notwithstanding the foregoing, an argument could be made that M.C.'s statement that Brian had said the kids "were driving him nuts" constituted double hearsay. (Aug. 24, 2011 Tr. at 208-222). However, even if the statement is double hearsay, it is harmless error in light of the remaining evidence in addition to M.C.'s statements.

{¶56} Thus, even assuming that all of M.C.'s statements were inadmissible, we still cannot find plain error. The juvenile court did not state that it relied on M.C.'s statement in rendering its judgment in this case. (Doc. Nos. 47, 47, 48). Furthermore, given the evidence regarding Nicole and Brian's failure to complete the case plan and take responsibility for their children, Nicole and Brian have not demonstrated that the outcome of the case would have been different absent M.C.'s statements.

{¶57} Nicole and Brian's fifth assignment of error is, therefore, overruled.

{¶58} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**