OPINION
{¶ 1} Appellant, Michael Thomas, appeals a Hancock County Common Pleas Court Juvenile Division's decision granting permanent custody of his daughter, Ashley Thomas, to Appellee, Hancock County Department of Job and Family Services, Children's Protective Services Unit ("CPSU"). Mr. Thomas asserts that CPSU failed to implement a case plan reasonably calculated to achieve reunification with Ashley's biological parents. Additionally, Mr. Thomas argues that both he and Mrs. Thomas substantially complied with the case plan. Finding the record contains sufficient clear and convincing evidence supporting a finding that CPSU took appropriate steps and made reasonable efforts toward reunification, and that the Thomases did not substantially comply with the case plan, we affirm the judgment of the trial court.
 {¶ 2} Ashley Thomas was born on August 17, 2001, to Lori Barrett Thomas and Michael Thomas. Less than a year later, Ashley was removed from her parents' home. The police were contacted when Ashley fell from a stroller onto the city street while being pushed by her sister. It was reported that Ashley's sister was running and weaving with the stroller when the stroller hit the curb and Ashley fell out. Ashley was taken to the hospital and released with only minor injuries. The police officer who responded to the call reported that the parents' house was unsanitary, with dirty dishes lying around, prescription bottles on the floor, and overall unclean conditions inappropriate for a small child. CPSU was contacted, and Ashley was placed in foster care.
 {¶ 3} In August of 2002, the court found Ashley was a neglected and dependent child. Following the hearing, Ashley was placed in the temporary custody of CPSU and a case plan was filed with the goal of reuniting Ashley with her parents.
 {¶ 4} Pursuant to the case plan, Mrs. Thomas was to undergo mental health counseling, and both parents were to improve their parenting skills, provide and maintain a safe and stable living environment and a stable income in order to provide for their children. The plan also provided for weekly parenting classes and visitation with Ashley.
 {¶ 5} In January of 2003, CPSU filed a motion for permanent custody. A hearing on the motion was held in April of 2003. Subsequently, the court granted CPSU's request for permanent custody of Ashley and found that Ashley could not be placed with her parents within a reasonable time. From this judgment Mr. Thomas appeals, presenting two assignments of error for our review.
 Assignment of Error I
The Lower Court Erred In Granting Permanent Custody Of Ashley Thomas To Hancock County Job And Family Services-children's Protective Service Unit Because The Case Plan Was Not Reasonbly Calculated To Succeed In Reunifying Ashley With Her Biological Parents.
{¶ 6 In the first assignment of error, Mr. Thomas asserts that while the case plan may seem reasonable, it failed to consider Mrs. Thomas' cognitive issues and placed Mr. Thomas in a "catch-22" situation.
 {¶ 7} We note at the outset that a parent's right to raise his or her child is an "essential" and "basic civil right."[1] Parents have a "fundamental liberty interest" in the care, custody, and management of their children.[2] The rights and interests of a natural parent are not, however, absolute. Where a court finds that permanent custody is appropriate under circumstances of a particular case and all due process safeguards have been followed, whatever residual rights a parent may have are properly divested.[3]
 {¶ 8} Decisions concerning child custody matters lie within the sound discretion of the trial court and will not be reversed unless the trial court abused that discretion.[4] An abuse of discretion occurs when a court renders a decision that is arbitrary, unreasonable or unconscionable.[5] In reviewing this exercise of discretion, appellate courts must adhere to "every reasonable presumption in favor of the lower court's judgment and finding of facts"[6]
 {¶ 9} R.C. 2151.419 imposes a duty on the part of children services agencies to make reasonable efforts to reunite parent with their children where the agency has removed the children from the home.[7]
The agency bears the burden of showing that it made reasonable efforts.[8] "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated."[9] To that end, case plans establish individualized concerns and goals, along with the steps that the parents and agency can take to achieve reunification.[10]
Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan.[11] Nevertheless, the issue is not whether there was anything more that CPSU could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances.
 {¶ 10} As mentioned previously, the case plan required Mrs. Thomas to undergo mental health counseling, and both parents were directed improve their parenting skills, provide and maintain a safe and stable living environment and a stable income in order to provide for Ashley. The plan also provided for weekly parenting classes and visitation with Ashley. Mr. Thomas argues that this plan failed to consider Mrs. Thomas' cognitive issues and created a "catch-22," which set the plan up for failure.
 {¶ 11} The record reveals ample clear and convincing evidence to support the court's finding that CPSU made reasonable, diligent efforts with regards to the case plane. Caseworker, Kathy Elliott, testified that she was familiar with the Thomas family. She was aware that they were not successful in regaining custody of their other three children; thus, she adjusted the case plan in Ashley's case. Specifically, Elliott modified the type of parenting education the Thomases would receive and offered Mrs. Thomas mental health counseling. Understanding Mrs. Thomas' cognitive disabilities, the case plan provided for a hands-on parent education program that role-modeled correct parenting behavior.
 {¶ 12} The case plan also called on Mr. and Mrs. Thomas to provide and maintain a safe and stable living environment and provide a stable income for Ashley. Neither of these provisions can be considered unreasonable. Ashley was removed from the Thomas' care because of the stroller incident, as well as, the unsanitary conditions of the Thomas' home. CPSU had to address Ashley's environment as part of the reunification plan. Further, it is necessary for a family to be able to provide a stable income to support their children.
 {¶ 13} Finding there is sufficient evidence to support the trial court's finding that the case plan was reasonable in its efforts to reunify Ashley with her parents, the first assignment of error is overruled.
 Assignment of Error II
The Lower Court Erred In Granting Permanent Custody Of Ashley Thomas To The Hancock County Job And Family Services-children's Protective Services Unit Because Michael And Lori Thomas Substantially Complied With The Case Plan
 {¶ 14} In the second assignment of error, Mr. Thomas contends that the granting of permanent custody to CPSU was erroneous because both he and Mrs. Thomas substantially complied with the case plan. This argument is without merit for two reasons. First, substantial compliance with a case plan, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous.[12] The termination of parental rights is governed by R.C. 2151.414 and the standards set forth therein. That statue does not mandate such results.
 {¶ 15} Second, the dispositive issue is not whether the parent has substantially complied with the case plan, but whether the parent has substantially remedied the condition that caused the child's removal.[13]
This issue is relevant to the circumstances listed in R.C. 2151.414(E)(1) which, if found to exist, eliminate the court's discretion to conclude that the children can be placed with either of their parents.
 {¶ 16} In the present case, the Thomases neither substantially complied with the case plan nor substantially remedied the condition that caused the child's removal. Ashley was removed due to the incident where she had fallen out of a stroller, which was being pushed by her sister. Clearly, the Thomas' lack of parenting skills was at issue. The case plan called on the Thomases to improve their parenting skills. Of the forty-six hours of parental training offered, Mr. Thomas attended six hours of training and Mrs. Thomas attended sixteen hours of training. The Thomas' reasons for missing these sessions ranged from being sick to having "better things to do." Clearly, the Thomas' attendance rate cannot be considered substantial compliance.
 {¶ 17} Further, both the parent educator, Becky Shumaker, and caseworker, Elliott, reported that there had been no increase in the quality of the Thomas' visits with Ashley. Shumaker testified that both parents failed to interact with Ashley during their visits and did not understand the developmental phases of Ashley, as well as, their other children. Elliott testified that during Mrs. Thomas' visits, she purposely would take things from Ashley to antagonize her. When Ashley would cry, Mrs. Thomas would call her a crybaby. When Mrs. Thomas was confronted about her behavior with Ashley, she stated that "all parents pick on their kids" and that it was normal. Elliott testified that during Mr. Thomas' visits, he would just lie on the floor and there was little interaction between he and Ashley. Elliott also described an incident where Mr. Thomas believed another child to be Ashley. Clearly, both Mr. and Mrs. Thomas failed to improve their parenting abilities.
 {¶ 18} The Thomases also failed to provide a safe and stable living environment for Ashley. While there was evidence that the Thomases had maintained the same household for over a year and that household was substantially cleaner than it had been at the time Ashley was removed from the home, there was also evidence that a sexual predator and a man the Thomases had meet through a "dirty chat room" were living in the home. Furthermore, Elliott had witnessed inappropriate materials on the home computer during one of her visits.
 {¶ 19} Based on the Thomas' failure to improve their parenting skills, as well as, their failure to provide a safe and stable living environment, we find there is sufficient evidence to support the trial court's finding that the situation that caused Ashley to be removed was not remedied. Accordingly, the second assignment of error is overruled.
 {¶ 20} Having found no error prejudicial to the appellant herein, we affirm the judgment of the trial court.
 Judgment affirmed. BRYANT, P.J., and SHAW, J., concur.
[1] In re Murray (1990), 52 Ohio St.3d 155, 157; Stanley v. Illinois
(1972), 405 U.S. 645, 651.
[2] Murray, 52 Ohio St.3d at 157; Santosky v. Kramer (1982),455 U.S. 745, 753.
[3] In re Palmer (1984), 12 Ohio St.3d 194, 196, certiorari deniedPihlblad v. Starke County Welfare (l985), 469 U.S. 1162.
[4] Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
[5] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[6] In re Brodbeck (1994), 97 Ohio App.3d 652, 659, quoting Gerijo,Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226.
[7] In re Brown (1994), 98 Ohio App.3d 337, 344.
[8] R.C. 2151.419(A)(1).
[9] In re Evans (Oct. 30, 2001), 3rd Dist. No. 1-01-75, unreported.
[10] Id.
[11] Id.
[12] In re Pittman, 9th Dist. No. 20894, 2002-Ohio-2208, at ¶ 59.
[13] Id. at ¶ 60.