[Cite as *In re E.B.*, 2021-Ohio-3641.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# HANCOCK COUNTY

IN RE:

        E.B.,

CAS ENO.  5-21-09

ADJUDICATED DEPENDENT CHILD.

**O P I N I O N**

[AUBREY V. - APPELLANT]

---

IN RE:

        C.B.,

CAS ENO.  5-21-10

ADJUDICATED DEPENDENT CHILD.

**O P I N I O N**

[AUBREY V. - APPELLANT]

---

**Appeals from Hancock County Common Pleas Court
Juvenile Division
Trial Court Nos. 20193077 and 20193076**

**Judgments Affirmed**

**Date of Decision:  October 12, 2021**

---

**APPEARANCES:**

    *Angela M. Elliott* **for Appellant**

    *Justin J. Kahle* **for Appellee, Hancock County Department of Job and Family Services, Child Protective Services Unit**

    *Howard A. Elliott* **in support of Appellant on behalf of amicus curiae, E.B. and C.B., the minor children**

**ZIMMERMAN, J.**

{¶1} This is an appeal from the February 23, 2021 decisions of the Hancock County Court of Common Pleas, Juvenile Division, which terminated the parental rights of the appellant, Aubrey V., mother of E.B. and C.B. ("Aubrey"), and granted permanent custody of her minor children to Hancock County Department of Job and Family Services, Child Protective Services Unit (the "agency") (collectively "the parties"). For the reasons that follow, we affirm.

{¶2} Aubrey and David B. ("David") are the natural and biological parents of E.B., born 2011 and C.B., born 2005, (collectively "the children").[1] (Feb. 2, 2021 Tr. at 96); (Trial Court Ex. A); (Agency Exs. 1, 2). On August 1, 2019, the agency filed complaints alleging the children to be dependent under R.C. 2151.04(C). (Case No. 20193077, Doc. No. 1); (Case No. 20193076, Doc. No. 1); (Agency Exs. 9, 10). The agency sought an *ex parte* order of emergency temporary custody of the children, which the trial court granted determining that:

> The agency has made Reasonable Efforts to prevent the removal of the child[ren] in that they provided information and referral, other investigation, and case management.
>
> Based upon the information presented to this Court, this Court hereby finds that CPSU has made reasonable efforts to avoid removal of the child[ren] and that removal is in the best interest of the child[ren].[2]

---

[1] David is deceased having passed away in a car accident in 2013. (Case No. 20193077, Doc. No. 17); (Case No. 20193076, Doc. No. 20); (Feb. 2, 2021 Tr. at 96); (Trial Court Ex. A).

[2] C.B. had been injured as a result of a physical altercation between Aubrey's boyfriend, Travis E. ("Travis") and another male; C.B. had tested positive for alcohol and drugs for which Aubrey was facing contributing-

(Case No. 20193077, Doc. No. 2); (Case No. 20193076, Doc. No. 2); (Agency Exs. 3, 4).  Notwithstanding the *ex parte* order of emergency temporary custody, at the initial shelter-care hearing on August 5, 2019, the children had not yet been physically removed from the home because the agency was unable to locate the children, and Aubrey had not received notice of the scheduled hearing.  (Case No. 20193077, Doc. No. 4); (Case No. 20193076, Doc. No. 4); (Agency's Exs. 5, 6).

{¶3} Ultimately, the children were located and Aubrey was served with notice of the dependency action on August 24, 2019.  After the shelter-care hearing and on September 5, 2019, the trial court concluded that probable cause existed to believe that the children were dependent; that it was in the children's best interest to be placed into the temporary custody of the agency; and that the agency had made

> 2.  CPSU made *reasonable efforts* to avoid removing the child[ren] from the home;
>
> 3. Removal of the child[ren] from the home is in his/her *best interest* and it would be *contrary to his/her welfare* to remain in the home;

(Emphasis sic.)  (Case No. 20193077, Doc. No. 9); (Case No. 20193076, Doc. No. 12); (Agency Exs. 7, 8).

---

to-delinquency-of-a-child charge arising from Hancock County Court of Common Pleas, Juvenile Division; Aubrey continued to have contact with Travis after his arrest for domestic violence, in spite of the no-contact order; Aubrey was non-compliant with the agency by not permitting the caseworker in her voluntary case to conduct home visits with the children; and Aubrey was also non-compliant with the C.B.'s conditions of probation.  (Case No. 20193077, Doc. No. 2); (Case No. 20193076, Doc. No. 2); (Feb. 2, 2021 Tr. at 96).

{¶4} The trial court appointed the children a Court Appointed Special Advocate/Guardian Ad Litem ("GAL") on September 12, 2019. (Case No. 20193077, Doc. No. 10); (Case No. 20193076, Doc. No. 13). The GAL filed a report in the trial court on October 30, 2019 recommending that the trial court continue temporary custody of the children to the agency. (Case No. 20193077, Doc. No. 17); (Case No. 20193076, Doc. No. 20).

{¶5} At the adjudicatory hearing on September 19, 2019, Aubrey and the agency reached an agreement that the children were dependent. Thereafter, the trial court accepted the agreement of the parties and found the children to be dependent children under R.C. 2151.04(C).[3] (Case No. 20193077, Doc. No. 12); (Case No. 20193076, Doc. No. 15); (Agency Exs. 11, 12).

{¶6} At the dispositional hearing on October 31, 2019 and by judgment entry journalized on November 19, 2019, the trial court ordered that the children remain in the temporary custody of the agency and found that the:

> placement to be in the children's *best interest* and that it would be *contrary to their welfare* to be returned home at this time.

(Emphasis sic.) (Case No. 20193077, Doc. No. 20); (Case No. 20193076, Doc. No. 24).

---

[3] At the time of adjudication, Aubrey was incarcerated in the Hancock County Jail pursuant to the State's motion to invoke Aubrey's six-month jail sentence for contributing-to-the-delinquency-of-a-child charges. (Case No. 20193077, Doc. Nos. 14, 15, 17, 57); (Case No. 20193076, Doc. Nos. 17, 18, 20, 62).

{¶7} On January 2, 2020, Aubrey was admitted to the Hancock County Court of Common Pleas, Juvenile Division Family Dependency Treatment Court ("FDTC"), was ordered to comply with certain terms and conditions of the program, and was released from jail. (Case No. 20193077, Doc. Nos. 22, 23, 57); (Case No. 20193076, Doc. Nos. 26, 27, 62); (Agency Exs. 17, 18). However, as a result of Aubrey's non-compliance with the FDTC program, several bench warrants were issued for her arrest.[4] (Case No. 20193077, Doc. Nos. 30, 41); (Case No. 20193076, Doc. Nos. 34, 48). (*See* Case No. 20193077, Doc. Nos. 24, 25, 26, 28, 33, 38, 40); (Case No. 20193076, Doc. Nos. 28, 29, 30, 32, 37, 40, 45, 47); (Agency Exs. 19, 20). Ultimately, on September 24, 2020, Aubrey was unsuccessfully discharged and terminated from the FDTC program, and was ordered to serve a jail sentence. (Agency's Ex. 21).

{¶8} Thereafter, on October 12, 2020, the agency filed a motion for permanent custody. (Case No. 20193077, Doc. No. 42); (Case No. 20193076, Doc. No. 49); (Agency Exs. 14, 15). The GAL filed a report in the trial court on January 28, 2021 recommending that the trial court grant permanent custody of the children to the agency. (Case No. 20193077, Doc. No. 57); (Case No. 20193076, Doc. No. 62).

---

[4] Aubrey failed to appear for scheduled hearings, tested positive for a non-prescribed medication, failed to reengage treatment, and missed other individual appointments with Family Resource Center. (Feb. 2, 2021 Tr. at 76); (Agency's Ex. 21).

{¶9} After conducting the permanent-custody hearing on February 2, 2021, the trial court granted permanent custody of E.B. and C.B. to the agency on February 23, 2021. (Case No. 20193077, Doc. No. 60); (Case No. 20193076, Doc. No. 65).

{¶10} Aubrey filed a timely notice of appeal as to each child and raises one assignment of error in each case for our review.[5] (Case No. 20193077, Doc. No. 62); (Case No. 20193076, Doc. No. 67).

### Assignment of Error

**The Trial Court Failed To Make Findings Consistent With The Standard Of Clear And Convincing Evidence And The Finding Of Permanent Custody Is Against The Manifest Weight Of The Evidence.**

{¶11} In her sole assignment of error, Aubrey argues that the trial court erred in granting permanent custody of the children to the agency because the trial court failed to make the requisite findings under R.C. 2151.414 consistent with clear and convincing evidence and because the trial court's findings were against the manifest weight of the evidence.

*Standard of Review*

{¶12} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court

> "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts

---

[5] Amicus curiae E.B. and C.B. filed a brief in this appeal. (*See* Case No. 5-21-09, JE, May 24, 2021) (granting leave to file a brief of an amicus curiae (properly captioned) pursuant to App.R. 17 in support of Aubrey's appeal).

in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'"

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, *superseded by statute and rev'd on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); accord *In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶ 23-24, quoting *Thompkins* at 387, quoting *Martin* at 175.

### Relevant Authority

{¶13} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6, citing *In re Palmer*, 12

Ohio St.3d 194, 196 (1984), *cert. denied*, *Pihlblad v. Starke Cty. Welfare Dept.*, 469 U.S. 1162, 105 S.Ct. 918 (1985).

{¶14} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. By clear and convincing evidence: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child. *Id. See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994).

{¶15} R.C. 2151.414(B)(1) provides, in pertinent part, that a trial court

> may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b)    The child is abandoned.

\* \* \*

(d)    The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and \* \* \* the child was previously in the temporary custody of an equivalent agency in another state.

R.C. 2151.414(B)(1)(a), (b), (d).

{¶16} Here, the agency requested that the trial court grant their motion for permanent custody under R.C. 2151.414(B)(1)(a). (Case No. 20193077, Doc. No. 42); (Case No. 20193076, Doc. No. 49). However, the trial court determined that R.C. 2151.414(B)(1)(a), (b), and (d) were applicable to the instant case and each were sufficient bases for the trial court to grant permanent custody. (Case No. 20193077, Doc. No. 60); (Case No. 20193076, Doc. No. 65).

{¶17} If the trial court makes the statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or

conviction as to the facts sought to be established." *In re S.G.* at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Ledford* at 477, citing *Ford v. Osborn*, 45 Ohio St. 1 (1887), *Cole v. McClure*, 88 Ohio St. 1 (1913), and *Frate v. Rimenik*, 115 Ohio St. 11 (1926). If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280-281 (1978).

{¶18} Moreover, issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier-of-fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶19} Furthermore,

'[w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier-of-fact] that the party having the burden of proof will be entitled to their

verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.""

*Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed. 1990).

*Analysis*

*(R.C. 2151.414)*

{¶20} Because it is dispositive, we will only address the trial court's determination under R.C. 2151.414(B)(1)(d). Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period, a trial court *need not* find that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. *In re I.G.*, 3d Dist. Marion Nos. 9-13-43, 9-13-44, and 9-13-45, 2014-Ohio-1136, ¶ 30, citing R.C. 2151.414(B)(1)(d) and comparing it with R.C. 2151.414(B)(1)(a); *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 14 citing *In re I.G.* at ¶ 30, citing R.C. 2151.414(B)(1)(d).

{¶21} Importantly, the children had been in the temporary custody of the agency continuously since September 19, 2019. (Case No. 20193077, Doc. No. 12); (Case No. 20193076, Doc. No. 15). The agency filed its permanent-custody motion on October 12, 2020 with the final hearing taking place on February 2, 2021. (Case No. 20193077, Doc. No. 42); (Case No. 20193076, Doc. No. 49); (Feb. 2, 2021 Tr.).

Hence, the record is clear that the children were in the temporary custody of the agency in excess of 12 months in a consecutive 22-month period when the permanent custody motion was filed.[6]

{¶22} Accordingly, based on the evidence presented and because it is dispositive, we conclude that the trial court's determination under R.C. 2151.414(B)(1)(d) is sufficient to satisfy the first prong of the permanent-custody test, and under the evidence set forth in the record, such determination is not against the manifest weight of the evidence.

*(Best Interests)*

{¶23} Having satisfied the first prong of the permanent-custody test, we proceed to the second prong of the test—the trial court's consideration of the best-interest factors. R.C. 2151.414(D) contains the factors for a trial court to consider when determining whether granting permanent custody to an agency is in the best interests of a child. Those factors are as follows:

> (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a)   The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

---

[6] Importantly, the calculation from and including Thursday, September 19, 2019 to, but not including Monday, October 12, 2020 is 12 months and 23 days.

(b)    The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c)    The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)    The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)    Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶24} In reviewing the evidence in the record and determining the applicability of best-interest factors, we conclude that the trial court addressed the best-interest factors under R.C. 2151.414(D)(1)(a)-(e), and ultimately, concluded by clear and convincing evidence that it was in the best interest of the children that the agency be awarded permanent custody.

{¶25} Here, the trial court's judgment entry details the best-interest factors that it considered under R.C. 2151.414(D)(1)(a)-(d). Moreover, the trial court made findings specifying the evidence upon which it relied in consideration of the

statutory factors. (Case No. 20193077, Doc. No. 60); (Case No. 20193076, Doc. No. 65).

*Statutory Factors Discussed by Trial Court*

{¶26} Addressing R.C. 2151.414(D)(1)(a), which concerns the relationships with the children, the children's parents, siblings, relatives, and foster-care givers, the record contains evidence that the children were clearly bonded with Aubrey and enjoyed their visitations with her. (Feb. 2, 2021 Tr. at 35-39, 54); (Trial Court Ex. A). Notably, Aubrey failed to commence supervised visitations with her children (through the service provider) until November 16, 2020. (*Id.* at 34-39). Accordingly, the trial court determined this factor weighs in favor of permanent custody to the agency as in the best interest of the minor children.

{¶27} Regarding factor (D)(1)(b), concerning the wishes of the child as expressed directly or through the recommendation of the GAL, the GAL filed a report recommending that permanent custody be granted to the agency. (Case No. 20193077, Doc. No. 57); (Case No. 20193076, Doc. No. 62); (Trial Court Ex. A). Nevertheless, Kelli Miller ("Miller"), the children's ongoing caseworker, testified at the permanent-custody hearing that C.B. desired reunification with Aubrey, and that E.B. gave conflicting answers as to reunification. (Feb. 2, 2021 Tr. at 124-126); (Trial Court Ex. A). The trial court found that this best interest factor weighs against permanent custody to the agency.

{¶28} Lastly, the trial court discussed factors (D)(1)(c) and (D)(1)(d), concerning the children's custodial history and their need for permanency. Specifically, the trial court found that the children had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. (Case No. 20193077, Doc. No. 60); (Case No. 20193076, Doc. No. 65). Furthermore, the trial court determined that Aubrey had not made the necessary "strides" to address the bases for the removal of her children; "failed to make the necessary changes in her life"; and determined that "[Aubrey's] recent efforts appear disingenuous".  (*Id.*); (*Id.*).

{¶29} Indeed, the record supports that Aubrey had not obtained consistent, safe, and stable housing[7]; had not been abstinent for more than 12 days; failed to complete programming successfully (i.e., Intensive Outpatient Programming, Individual Counseling Appointments at Family Resource Center, Parent Project Sr., and Open Arm's General Education Classes for child protective services involved parents), and at best, had minimal compliance with improvements in attitude and behavior (as evidenced by the filing of multiple bench warrants for her arrest and by failing to comply with the terms and conditions of FDTC).  (Feb. 2, 2021 Tr. at 40-50, 56-65, 71-85); (Trial Court's Ex. A).  The trial court determined both factors

---

[7] At the time of the permanent-custody hearing, Aubrey was living with a relative who had an extensive history of agency involvement, drug use, and criminal history. (Feb. 2, 2021 Tr. at 114). Moreover, it was alleged that this is the relative who introduced Aubrey to drugs in the first instance. (Trial Court's Ex. A).

weigh in favor of granting permanent custody to the agency as in the best interest of the children.

{¶30} Even though the trial court did not analyze subsection (e) of R.C. 2151.414(D)(1), which directs the trial court to consider whether R.C. 2151.414(E)(7) to (11) apply to the case at bar, the trial court did conclude that it made its findings pursuant to R.C. 2151.414(D)(1)(a), (c), (d), and *also R.C. 2151.414 (E)(10).* (Emphasis added.) (Case No. 20193077, Doc. No. 60); (Case No. 20193076, Doc. No. 65). Importantly, a detailed analysis of divisions (E)(2)-(E)(16) is contained in the trial court's judgement entry wherein the trial court discussed its reasonableness determination pursuant to R.C. 2151.414(B)(1)(a). (*Id.*); (*Id.*).

{¶31} After reviewing the best-interest factors on appeal, we conclude that there is clear and convincing evidence in the record to support the trial court's determination that granting permanent custody to the agency was in the best interests of the children. Consequently, the trial court's decision is not against the manifest weight of the evidence.

{¶32} Accordingly, we conclude that the trial court did not err by granting permanent custody of the children to the agency. Therefore, Aubrey's sole assignment of error is overruled.

**{¶33}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**