[Cite as *In re C.C.*, 2026-Ohio-1617.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

**IN RE:**

    **C.C.,**

**ADJUDICATED DEPENDENT CHILD.**

**[AMANDA E. - APPELLANT]**

**CASE NO. 11-25-07**

**OPINION AND
JUDGMENT ENTRY**

Appeal from Paulding County Common Pleas Court
Juvenile Division
Trial Court No. 202333007

**Judgment Affirmed**

**Date of Decision:  May 4, 2026**

**APPEARANCES:**

    *Jeffrey J. Horvath* **for Appellant**

    *Joseph R. Burkard* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Mother-appellant, Amanda E. ("Amanda"), appeals the July 21, 2025 judgment of the Paulding County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor child, C.C., to the Defiance-Paulding Consolidated Department of Job and Family Services (the "agency"). For the reasons that follow, we affirm.

{¶2} Amanda and Christopher C. ("Christopher") are the biological parents of C.C. At the time of C.C.'s birth, Amanda was in prison in Ohio and Christopher was incarcerated in Indiana.

{¶3} On June 28, 2023, the agency filed a complaint in the trial court alleging that C.C. is a dependent child under R.C. 2151.04(C). Specifically, the complaint alleged that Amanda is incarcerated and does not qualify for the prison's nursery program so that she may keep the newborn with her while serving her sentence. The complaint further alleged that Amanda has given birth to seven children and does not have legal custody of any of them. That same day, the trial court issued an ex parte emergency order placing C.C. in the temporary custody of the agency.

{¶4} Following a shelter-care hearing on June 29, 2023, the trial court found probable cause to believe that C.C. is a dependent child. The trial court further found that it is in the child's best interest to remain in the temporary custody of the

agency. The trial court also appointed a guardian ad litem ("GAL") to represent C.C.

{¶5} An adjudicatory hearing was held on August 11, 2023 wherein Amanda and Christopher admitted to the allegations contained in the complaint. The trial court adjudicated C.C. a dependent child and found that it is in the child's best interest to remain in the temporary custody of the agency. Following a dispositional hearing on August 22, 2023, the trial court approved the agency's case plan and found that it is in the child's best interest to remain in the temporary custody of the agency. Pertinent to this appeal, the case plan provided that

> Amanda will have to complete her sentence and any conditions such as probation/parole upon her release. Amanda will need to work with the agency and complete mental health/substance abuse assessment and follow recommendations of provider. *Amanda will need to get herself established after her release such as finding appropriate housing and employment to provide for the needs of her child.*

(Emphasis added.) (Doc. No. 13).

{¶6} The trial court held its first review hearing on November 2, 2023. The trial court found that C.C. is doing well in the foster family placement. The trial court further found that Amanda is living in a halfway house and visiting with the child twice a month. The trial court found that "[i]t would be contrary to the welfare and best interest of the child for the child to return to [Amanda's] care at this time. Return to [Amanda's] care would create a danger to the health and welfare of the

child." (Doc. No. 24). The trial court ordered the agency to facilitate more visitation once Amanda is able to secure housing.

{¶7} On February 15, 2024, Amanda filed a motion in the trial court setting forth her intent "to relocate to Indiana, where she will be closer to her support system and explore further employment options." (Doc. No. 30). The motion acknowledged Amanda's awareness that a move to Indiana "could create potential issues with her case plan and reunification." (*Id.*).

{¶8} The trial court held its second review hearing on March 14, 2024. At the time of the second review hearing, Amanda was residing in Indiana. The trial court found that it is in the child's best interest to remain in the temporary custody of the agency. The trial court further found that "neither [Amanda] nor [Christopher] have been able to actively and consistently participate in and follow the Agency's case-planning efforts. [Amanda] has only recently obtained housing independent of ODRC and transitional housing." (Doc. No. 36). The trial court ordered the agency to facilitate supervised visitation for Amanda. The trial court further ordered Amanda to sign a release of information so that the agency may verify her sobriety.

{¶9} The trial court held its third review hearing on June 17, 2024. The trial court found that C.C. is doing well in the foster home placement and that it is in the child's best interest to remain in the temporary custody of the agency.

{¶10} The trial court held its fourth review hearing on August 26, 2024. Amanda did not attend the hearing. After receiving updates from the agency and the GAL, the trial court ordered that "[t]he Agency shall continue to have temporary custody of the minor child." (Doc. No. 40).

{¶11} On September 25, 2024, Amanda filed a motion requesting that the case be closed because the agency failed to request a six-month extension prior to the "sunset date" of one year from the initial grant of temporary custody as required by R.C. 2151.415(D)(1). Based on the agency's failure to request a six-month extension on or before June 28, 2024, Amanda argued that the case should be closed and custody of C.C. should be returned to her.

{¶12} On September 26, 2024, the agency filed an opposition to Amanda's motion. The agency argued, in part, that the case should not be closed since the goals of the case plan have not been met.

{¶13} The matter came before the trial court on October 21, 2024.[1] On November 21, 2024, the trial court denied Amanda's motion to close the case.

{¶14} The trial court held its fifth review hearing on December 4, 2024. In its December 5, 2024 judgment entry, the trial court noted that Amanda is residing in an extended-stay hotel in Indiana. The trial court further noted that the agency

---

[1] A transcript of proceedings held on October 21, 2024 is not included in the record on appeal.

arranged supervised visitation for Amanda through Adriel, with transportation assistance. The trial court continued the agency's temporary custody of C.C.

{¶15} On December 6, 2024, the agency filed a motion requesting a six-month extension of the agency's temporary custody of C.C "to allow the biological parents additional time to complete their case plan goals." (Doc. No. 52). On December 9, 2024, the trial court granted a six-month extension of the agency's temporary custody of C.C.

{¶16} The trial court held its sixth review hearing on February 26, 2025. In its March 5, 2025 judgment entry, the trial court noted that Amanda has a case open in Indiana involving another child. The trial court further noted that Amanda is still residing in a hotel in Indiana and continues to struggle with transportation issues. The trial court stated that Amanda "has been testing positive for THC" and "she mentioned to the Court that she does not believe that she has to work, as she receives social security income." (Doc. No. 64). The trial court continued the agency's temporary custody of C.C.

{¶17} The trial court held its seventh review hearing on April 30, 2025. Amanda did not attend the hearing. In its May 2, 2025 judgment entry, the trial court noted that Amanda is still residing in a hotel in Fort Wayne, Indiana. The trial court further noted that Amanda has not been attending supervised visitation and has tested positive for THC and methamphetamines. The trial court continued the agency's temporary custody of C.C.

{¶18} On May 13, 2025, the agency filed a motion for permanent custody alleging that C.C. has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. Specifically, the motion states that C.C. has continuously been in the temporary custody of the agency since on or about June 28, 2023, and that an order for permanent custody is in the child's best interest. The motion further states that the agency has provided the services to the parents as set forth in the case plan to attempt to ensure the child's safe return to them, and has made reasonable efforts to reunite the child with the parents. Despite the agency's efforts, the parents have failed to substantially remedy the conditions that caused the child to be removed from their care.

{¶19} On June 9, 2025, the GAL filed his report regarding the agency's motion for permanent custody. In his report, the GAL states that C.C. has been in the same foster home for nearly two years and "is well bonded with the foster parents, is hitting appropriate milestones based on [the child's] age, and appears well cared for and adjusted." (Doc. No. 72). As to Amanda's relationship with C.C., the GAL notes that Amanda resides in a hotel in Fort Wayne, Indiana and has struggled with transportation issues. Amanda has cancelled a number of visits with the child and "visits have not taken place for the last several months." (*Id.*). With respect to Amanda's sobriety, the GAL states that Amanda tested positive for methamphetamines on April 29, 2025. The GAL further states that Amanda tested positive for THC on April 16, 2025. Due to Amanda's positive drug screens,

housing concerns, employment concerns, and drug and mental health service concerns, the GAL recommends that the agency's motion for permanent custody be granted.

{¶20} A hearing on the permanent-custody motion was held on July 14, 2025.[2] Amanda testified at the hearing that she has been living in a hotel room in Fort Wayne for approximately one year and that she "started a job a couple weeks ago at Applebee's." (July 14, 2025 Tr. at 39). Amanda further testified that she has given birth to seven children and that they all have been removed from her custody. Amanda denied ever having her parental rights involuntarily terminated. "I signed off on the paperwork for the adoptions to go through. They have not been forcefully removed." (*Id.* at 40-41). As to her visitation with C.C., Amanda acknowledged that she has missed scheduled visits and that her last visit with the child took place on February 28, 2025.

{¶21} Amanda's visitation with C.C. was scheduled through Adriel. An Adriel employee testified at the permanent-custody hearing that Amanda attended only 26 out of 54 scheduled visits from May 2024 to March 2025. The employee further testified that Amanda's visitation was suspended in March 2025 due to excessive missed visits.

---

[2] We note that the record on appeal includes a transcript of proceedings held on July 14, 2025. The transcript reflects that the trial court recorded the permanent-custody hearing. However, shortly after the first witness was sworn in (being Christina Crossgrove, the agency's caseworker), the transcript indicates "*(Recording stops)*" without further explanation. (Emphasis in original.) (July 14, 2025 Tr. at 11). Other than a few lines of testimony regarding background information, the remainder of Ms. Crossgrove's testimony is missing from the transcript.

{¶22} Starr Herndon also testified at the permanent-custody hearing. Ms. Herndon testified that she is the case manager for Amanda's case in Indiana involving another child. Ms. Herndon further testified that Amanda is screened once a week in Indiana and consistently tests positive for THC and prescribed suboxone. Ms. Herndon confirmed that Amanda tested positive for illegal narcotics in April 2025.

{¶23} On July 21, 2025, the trial court issued a judgment entry granting the agency's motion for permanent custody of C.C. The trial court found that the agency established by clear and convincing evidence that C.C. has been in the temporary custody of the agency for more than 12 of the previous 22 months. The trial court further found, by clear and convincing evidence, that granting permanent custody of C.C. to the agency is in the child's best interest.

{¶24} On July 25, 2025, Amanda filed her notice of appeal.[3] She raises two assignments of error for our review. For ease of discussion, we will consider the assignments of error out of order.

### Second Assignment of Error

**The Trial Court's Decision To Award Permanent Custody To The Agency Was Against The Manifest Weight Of The Evidence**

{¶25} In her second assignment of error, Amanda argues that the trial court erred by granting permanent custody of C.C. to the agency. In particular, Amanda

---

[3] Christopher did not file a notice of appeal.

contends that the problems that led to C.C's removal "had been resolved or mitigated" such that the trial court's decision is not supported by clear and convincing evidence. (Appellant's Brief at 13).

*Standard of Review*

**{¶26}** The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The rights and interests of a natural parent, however, are not absolute. *In re Thomas*, 2003-Ohio-5885, ¶ 7 (3d Dist.). These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 2003-Ohio-1269, ¶ 6 (3d Dist.).

**{¶27}** When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. In particular, R.C. 2151.414 establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody. First, the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies. Second, the trial court must find that permanent custody is in the best interest of the child under the factors enumerated in R.C. 2151.414(D). *In re K.S.*, 2021-Ohio-3786, ¶ 11 (3d Dist.).

**{¶28}** As to the first part of the permanent-custody test, R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

-10-

may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, *has not been* in the temporary custody of one or more public children services agencies . . . for twelve or more months of a consecutive twenty-two-month period . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

. . .

(d) The child *has been* in the temporary custody of one or more public children services agencies . . . for twelve or more months of a consecutive twenty-two-month period . . . .

(Emphasis added.) R.C. 2151.414(B)(1)(a), (d). *See In re A.W.,* 2017-Ohio-7786, ¶ 17 (9th Dist.) (noting "that the five factors listed in R.C. 2151.414(B)(1)(a)-(e) are alternative findings, and that the agency need only prove one in order to satisfy the first prong of the permanent custody test").

{¶29} "If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest." (Emphasis in original.) *In re A.F.*, 2012-Ohio-1137, ¶ 55 (3d Dist.). Thus, the second part of the permanent-custody test mandates that the trial court consider the following factors to determine the child's best interest:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home

providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e). Under the second part of the permanent-custody test, "the trial court considers the totality of the circumstances when making its best interest determinations. No single factor is given more weight than others." *In re N.R.S.*, 2018-Ohio-125, ¶ 16 (3d Dist.).

{¶30} If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re A.E.*, 2014-Ohio-4540, ¶ 28 (3d Dist.) ("A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence

by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established.").

{¶31} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

{¶32} In this case, the trial court determined that C.C. has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period as set forth in R.C. 2151.414(B)(1)(d). The trial court also determined that C.C. cannot be placed with either parent within a reasonable period of time or should not be placed with either parent under R.C. 2151.414(B)(1)(a). Specifically, the trial court found as follows:

> The Agency has met its burden of proof by clear and convincing evidence that the child cannot be returned to [the] parents within a reasonable time or should not be returned to [the] parents and that the child has been in the temporary custody of the Agency for more than 12 of the previous 22 months. During that time, [the child] has integrated into the [foster] family, and none present at the hearing had any concerns about the care [the child] has received while in the foster placement. [Amanda] has demonstrated a lack of stability, willingness or ability to follow and complete case plan goals, including maintaining sobriety, has missed over half of her supervised scheduled visits with [the child] in the two years this case has been

pending, and has failed to show that she can and will provide a stable home for [the child]. [The child's father] is incarcerated and continues his own struggles with drug addiction.

(Doc. No. 80). The trial court further found that it is in the child's best interest to grant the agency's motion for permanent custody.

{¶33} In her second assignment of error, Amanda argues that the trial court's decision to award permanent custody to the agency is against the manifest weight of the evidence. As to the first part of the permanent-custody test, Amanda does not challenge the trial court's determination under R.C. 2151.414(B)(1)(d) that C.C. has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. Thus, with respect to the second part of the permanent-custody test, we must review the factors set forth in R.C. 2151.414(D)(1) to determine if clear and convincing evidence supports the trial court's best-interest determination.

{¶34} Regarding the best-interest factor under R.C. 2151.414(D)(1)(a), the trial court considered the interaction and interrelationship of the child with the parents, siblings, relatives, and the foster family. The trial court found that Amanda has demonstrated a lack of commitment toward C.C. by failing to regularly visit with the child when able to do so. The record supports this finding in that Amanda attended only 26 out of 54 scheduled visits with the child. Amanda's last visit with the child took place several months prior to the permanent-custody hearing. Moreover, even though Amanda has given birth to seven children, she does not have legal custody of any of them. The trial court further considered that C.C. has been

in the home of the foster family since shortly after birth and has been doing well in their care.

{¶35} With respect to R.C. 2151.414(D)(1)(b)—the child's wishes—the trial court considered C.C.'s young age and appointed a GAL to represent the child. In his report, the GAL noted that the child is well bonded with the foster parents and appears to be well cared for and adjusted. The GAL further noted that Amanda tested positive for methamphetamines in April 2025 and has not visited the child in the last several months. Based on Amanda's inability to meet case plan goals, positive drug screens, housing concerns, employment concerns, and mental health concerns, the GAL recommended granting the agency's motion for permanent custody as being in the best interest of the child.

{¶36} Concerning R.C. 2151.414(D)(1)(c)—the child's custodial history—the trial court found that the child has been in the agency's temporary custody since shortly after the child's birth in 2023. The trial court further found that, during this almost two-year period, Amanda demonstrated a lack of commitment toward C.C. by failing to regularly visit with the child and by failing to provide an adequate permanent home for the child.

{¶37} As to R.C. 2151.414(D)(1)(d)—the child's need for a legally secure permanent placement—the trial court found that C.C. cannot and should not be placed with either parent within a reasonable time. The trial court considered Amanda's lack of stability and her unwillingness to follow and complete the case

plan goals. The trial court further considered Amanda's inability to maintain sobriety and to provide a stable home for the child. The record supports the trial court's findings and that permanent custody is the only available means of providing permanency and stability to the child.

{¶38} For these reasons, based on the totality of the evidence, we conclude that the trial court's best-interest determination is supported by clear and convincing evidence. Therefore, the trial court's decision to grant the agency's motion for permanent custody is not against the manifest weight of the evidence.

{¶39} Amanda's second assignment of error is overruled.

**First Assignment of Error**

**The Trial Court Erred By Not Holding Further Disposition Hearings To Extend The Agency's Temporary Custody From June 28, 2024 To December 28, 2024 And From December 28, 2024 To June 28, 2025**

{¶40} In her first assignment of error, Amanda argues that the trial court erred by not holding dispositional hearings prior to extending the agency's temporary custody of C.C. In particular, Amanda contends that she was prejudiced by the "procedural drift" because C.C. remained in the agency's temporary custody for 12 out of a 22-month period. (Appellant's Brief at 12).

*Standard of Review*

{¶41} If a child is adjudicated an abused, neglected, or dependent child, R.C. 2151.353(A) provides that the trial court may "[c]ommit the child to the temporary

custody of . . . [a] public children services agency." R.C. 2151.353(A)(2)(a). Moreover, R.C. 2151.353(G) provides that any temporary custody order issued pursuant to R.C. 2151.353(A) shall terminate one year after the earlier of the date on which the complaint was filed or the child was first placed into shelter care. This is known as the "sunset date."

{¶42} The Ohio Supreme Court held in *In re Young Children*, 76 Ohio St.3d 632, 637 (1996), that the passing of the sunset date does not divest juvenile courts of jurisdiction to enter dispositional orders. "[W]hen the sunset date has passed without a filing pursuant to R.C. 2151.415 and the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated, courts have the discretion to make a dispositional order in the best interests of the child." *Id.* at 638.

{¶43} An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶44} In this case, it is undisputed that the agency did not file a motion for the extension of temporary custody until December 6, 2024—being several months after the passing of the sunset date on June 28, 2024. It is further undisputed that the trial court did not hold a dispositional hearing prior to ordering the extension of temporary custody.

**{¶45}** On appeal, Amanda argues that "[t]hese procedural breakdowns allowed the Agency to drift into the minimum requirement of having C.C. in its temporary custody for 12 out of a 22-month period, which became the basis in this case for permanent custody." (Appellant's Brief at 11-12). We disagree.

**{¶46}** The record shows that this case did not "drift" in the trial court after the passing of the sunset date. Beginning in June 2024, the trial court held hearings every other month to review the status of the case. Following the hearings, the trial court issued judgment entries continuing the agency's temporary custody of the child.

**{¶47}** The record further shows that the problems that led to the original grant of temporary custody to the agency have not been resolved. After Amanda completed her prison sentence in or around March 2024, she moved to Indiana. At the time of the permanent-custody hearing on July 14, 2025, Amanda had been residing in a hotel room in Fort Wayne, Indiana for approximately one year. She failed to attend more than half of the scheduled visits with the child, consistently tested positive for THC, and tested positive for methamphetamines in April 2025. In its July 21, 2025 judgment entry, the trial court found that permanent custody is in the child's best interest because, "in the two years this case has been pending," Amanda "has failed to show that she can and will provide a stable home for [the child]." (Doc. No. 80). Consequently, the trial court ordered the termination of

Amanda's parental rights. *See* R.C. 2151.415(A)(4) (providing that a dispositional order includes an order permanently terminating parental rights).

{¶48} Based on the foregoing, we conclude that the trial court did not err by continuing the agency's temporary custody beyond the passing of the sunset date. We further conclude that, since the problems that led to the original grant of temporary custody to the agency have not been resolved, the trial court did not abuse its discretion when it made a dispositional order in the best interest of the child.

{¶49} Amanda's first assignment of error is overruled.

{¶50} Having found no error prejudicial in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and WALDICK, J.J., concur.**

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

_____
William R. Zimmerman, Judge


_____
Mark C. Miller, Judge


_____
Juergen A. Waldick, Judge

DATED:
/hls